IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BARRY SHAFFER and KIMBERLY SHAFFER,** | : :<br>: |
| **Plaintiffs** | : Civil Action No. 1:13-cv-01837<br>: |
| v. | : : |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,** | : : :<br>: |
| **Defendant** | : The Honorable Sylvia H. Rambo<br>: : |

# **M E M O R A N D U M**

Presently before the court is Defendant State Farm Mutual Insurance Company's ("State Farm") motion to dismiss Count II of the complaint. (Doc. 3.) For the reasons set forth below, the motion will be denied.

**I.     Background**

　　A.    Facts

This case arises from State Farm's alleged bad faith handling of an underinsured motorist ("UIM") claim submitted by Plaintiffs. On September 5, 2008, Plaintiff Barry Shaffer was involved in a motor vehicle accident in the Middle District of Pennsylvania, wherein the tortfeasor made an illegal passing maneuver resulting in a violent head-on collision with the Shaffer's 2003 Toyota Sienna. (Compl. ¶¶ 7-12.)  Plaintiff Barry Shaffer claims that, as a result of the accident, he sustained painful and severe injuries, including injuries to his neck, head and back, as well as several contusions and general shock to his body and nervous system. (*Id.* ¶ 26.)  Due to the nature of his injuries, he was forced to incur costs for medical treatment, therapy, and similar miscellaneous expenses in an effort to restore himself

to good health. (*Id.* ¶ 28.) In addition, he claims he has experienced physical and mental suffering, inconvenience in carrying out his daily activities, and loss of life's pleasures and enjoyment. (*Id.* ¶¶ 29, 31.) He continues to endure persistent pain and limitations and avers that his injuries may be permanent in nature, resulting in residual problems for the remainder of his lifetime. (*Id.* ¶ 30.) Plaintiff further claims that he has lost income from his inability to work and has experienced a permanent diminution of his earning power and capacity. (*Id.* ¶ 32.)

At the time of the accident, Plaintiffs were insured by State Farm under policy number 23 2135 C15 38F, which provided underinsured motorist benefits of $100,000 per person and allowed for stacking of the coverage totaling $200,000 on the policy. (*Id.* ¶ 6.) On April 25, 2011, State Farm consented to a third-party settlement and waived its subrogation interest. (*Id.* ¶ 13.) Plaintiffs claim that the vehicle operated by the tortfeasor was underinsured (*Id.* ¶ 14) and thus, Plaintiffs submitted a UIM claim pursuant to their policy[1] (*Id.* ¶ 14).

According to Plaintiffs, after opening the UIM claim, the Shaffers unilaterally provided State Farm with all of Barry Shaffer's accident-related medical records and reports as well as a vocational report. (*Id.* ¶¶ 16, 18.) On March 12, 2012, Plaintiffs submitted a demand to State Farm requesting settlement in the

---

[1] Despite their allegations that State Farm has failed to process the UIM claim in a timely manner, Plaintiffs did not provide the court with the date on which the claim was submitted to State Farm. Instead, Plaintiffs suggest that it was in April or May of 2011 by stating that, "State Farm consented to the third-party settlement and waived its subrogation interest on April 25, 2011," (Compl. ¶ 13), and, "[g]iven the fact that [the tortfeasor] was underinsured, Plaintiffs Barry Shaffer and Kimberly Shaffer, by and through their counsel, made an underinsured motorist claim." (*Id.* ¶ 14). Plaintiffs further allude to the claim being made in April or May 2011 when they assert that, "[i]n spite of the passage of over fourteen (14) months and extensive information, Defendant State Farm has <u>never</u> made an offer of settlement." (*Id.* ¶ 21.) Based on these statements, and for the purposes of this motion, the court will assume that the claim was made in and around May, 2011.

amount of $150,000, an amount less than the available underinsured motorist limits of $200,000. (*Id*. ¶ 17.) Thereafter, State Farm requested, and Plaintiffs provided, authorizations to obtain medical records (*Id*. ¶ 19) and a statement under oath from Plaintiff Barry Shaffer, which took place on June 12, 2012 (*Id*. ¶ 20).

Plaintiffs claim that the parties have been unable to reach an amicable resolution of the UIM claim. (*Id*. ¶ 22.) In fact, Plaintiffs assert that "State Farm has <u>never</u> made an offer of settlement." (*Id*. ¶ 21 (emphasis in original).) Consequently, and in accordance with State Farm's UIM endorsement, Plaintiffs filed this action alleging that State Farm has breached its contractual obligations to Plaintiffs and has acted in bad faith, which is actionable under 42 Pa. Cons. Stat. § 8371.[2] (*Id*. ¶ 22.) Plaintiffs seek compensatory damages for State Farm's breach of contract and punitive damages, interest, and attorney's fees for State Farm's bad faith actions.

B. Procedural History

This case was originally filed in the Dauphin County Court of Common Pleas on May 31, 2013, but was removed to this court by State Farm on July 3, 2013. (Doc. 1.) On July 10, 2013, State Farm filed the instant motion to dismiss for failure to state a claim, challenging only Plaintiff's bad faith claim.[2] (Doc. 3.) State Farm thereafter filed a brief in support of the motion on July 24, 2013 (Doc. 6), and on August 7, 2013, Plaintiff filed a brief in opposition to the motion. (Doc. 8.) The

---

[2] The applicable State Farm underinsured motorist endorsement does not provide for arbitration of UIM claims. (Compl. ¶ 23.)

[2] Defendant did not move to dismiss Count I for breach of contract and therefore it is a viable claim as the case now stands.

3

two-week period for a reply brief has expired and thus the motion is ripe for disposition.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate if, accepting as true all of the complaint's well-pleaded facts, a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court may only consider the facts alleged in the complaint, exhibits attached thereto, matters of public record, and documents that form the basis of the claim. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, *Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court must view all of the allegations and facts in the complaint in the light most favorable to the plaintiff, and it must grant the plaintiff the benefit of all reasonable inferences. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). The court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d. Cir. 1997) (citations omitted).

In deciding the motion, the court should not inquire whether the plaintiff ultimately will prevail on the merits; rather, the court's role is limited to determining if the plaintiff's factual allegations are sufficient "to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the claim. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S.

at 556); *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). While the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief." *Phillips*, 515 F.3d at 231-32 (quoting *Twombly*, 550 U.S. at 555). Put another way, the complaint must provide "'sufficient factual matter' to show that the claim is facially plausible," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), in order to "justify moving the case beyond the pleadings to the next stage of litigation." *Phillips*, 515 F.3d at 234-35.

In *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010), the Third Circuit set forth a three-part inquiry that a court in this Circuit must conduct when presented with a 12(b)(6) motion to dismiss. First, the court must identify the elements of the claim. *See Malieus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Next, the court should "review the complaint to strike conclusory allegations." *Id*. Lastly, the court should "[look] at the well-pleaded components of the complaint and evaluate whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id*.

### III.     Discussion

Plaintiffs assert their claim for bad faith pursuant to 42 Pa. Cons. Stat. § 8371, which provides a statutory remedy for an insurer's bad faith conduct. The statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer."

42 Pa. Cons.Stat. § 8371.[3]

Bad faith claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured." *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa.Super. Ct. 2006) (internal citations ommitted). Generally, to prevail on a bad faith claim, "the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that [the] defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citations ommitted); *see also Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F. 3d 218, 225 (3d Cir. 2005) (adopting the definition of bad faith as set forth in *Terletsky*). However, the statute is not limited to an insurer's bad faith in denying a claim. Rather, a plaintiff may also successfully assert an action for an insurer's bad faith in investigating a claim, *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999), such as a failure to conduct a reasonable investigation based upon available information, *Giangreco v. U.S. Life Ins. Co.*, 168 F. Supp. 2d 417, 423 (E.D. Pa. 2001), and failure to communicate with the claimant. *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994) (citing 3

---

[3] The Pennsylvania Superior Court has noted that the bad faith statute extends to the handling of UIM claims. *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006) (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 497 (Pa. Super. Ct. 2004).

Appleman, Ins. Law & Practice § 1612 (1967 & Supp. 1991)); *see also Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. Ct. 2009). In addition, even where a claim is eventually paid, "[d]elay is a relevant factor in determining whether bad faith has occurred." *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D. Pa. 1999) (citing *Klinger v. State Farm Mut. Auto Ins*. Co., 115 F.3d 230, 234 (3d Cir. 1997)).

To constitute bad faith, it is not necessary that the insurer's conduct be fraudulent; however, "mere negligence or bad judgment is not bad faith." *Terletsky*, 649 A.2d at 688. Instead, the plaintiff must show that the insurer breached its duty of good faith "through some motive of self-interest or ill-will." *Id*.

Significantly, there is a heightened burden of proof in bad faith claims, such that a plaintiff must demonstrate by "clear and convincing evidence" that an insurer acted in bad fath. *Id.* at 688. The standard "requires a showing by the plaintiff[ ] that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant[ ] acted in bad faith." *Bostick v. ITT Hartford Grp., Inc*., 56 F. Supp.2d 580, 587 (E.D. Pa. 1999) (citations ommitted). Thus, to defeat a bad faith claim, an insurer need only show that it acted reasonably. For instance,

> the insurance company need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusions. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.

*Mann v. UNUM Life Ins. Co. of Am.*, 2003 WL 22917545 at *7 (E.D. Pa. Nov, 23, 2003). Likewise, in bad faith claims involving "a long period of time between

7

demand and settlement," the delay "does not, on its own, necessarily constitute bad faith." *Kosierowski,* 51 F.Supp. 2d at 588. Rather, a court should look "to the degree to which a defendant insurer knew that [it] had no reason to deny the [claim]; if [the] delay is attributable to the need to investigate further or even simple negligence, no bad faith has occurred." *Id*. at 588-589.

Applying these legal principles to the present case, it would be premature to dismiss Plaintiffs' claim for bad faith. When viewed in the light most favorable to Plaintiffs, the record contains potentially unacceptable delays in acknowledging Plaintiffs' rights under the policy and paying Plaintiff the benefits under the UIM claim if Plaintiffs are, in fact, entitled to such coverage. Recognizing the possibility that Plaintiffs may not be entitled to such benefits, the court also notes that State Farm has yet to deny the claim.

The court disagrees with State Farm's argument that Plaintiffs only allegation of bad faith is that State Farm "has failed to pay UIM benefits without reasonable justification." (Doc. 3 at ¶ 15.) Plaintiffs allege that State Farm was on notice of the claim in April 2011 when it agreed to the third-party settlement. (Compl. ¶ 13.) Thereafter, Plaintiffs filed their UIM claim (*Id*. ¶ 14) and provided State Farm with all relevant medical records, medical reports, and a vocational report. (*Id*. ¶ 16). After providing State Farm with a demand for settlement in the amount of $150,000 (*Id*. ¶ 17), State Farm requested a statement under oath from Barry Shaffer as well as medical authorizations. (*Id*. ¶ 19). Plaintiffs complied with all requests. (*Id*. ¶ 20.) Plaintiffs assert that, although they have been forthcoming in providing State Farm with all of the relevant information, State Farm has failed to assess their claim and make an offer or denial, despite the passage of more than

8

fourteen months. (*Id.* ¶¶ 21-22.) While the court is mindful of the fact that State Farm may be conducting a comprehensive investigation into the claim thereby providing what may be a reasonable basis for any delay, these facts may also indicate questionable investigation and communication practices, especially considering that the underlying automobile accident involved a "clear liability, head-on collision." (Doc. 7, ¶ 16) Thus, the court concludes that this is a case in which discovery is needed regarding State Farm's handling of Plaintiffs' UIM claim, and therefore, dismissal is not proper at this stage of the proceedings.

**IV.** **Conclusion**

For the reasons set forth above, State Farm's motion to dismiss count II of the complaint will be denied. An appropriate order will issue.

                    s/Sylvia H. Rambo
                    United States District Judge

Dated: October 15, 2013.